UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00274-MR

| | | |
|---|---|---|
| AJANAKU MURDOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| R. DAVID MITCHELL, et al., | ) | |
| | | ) |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** comes before the Court on Defendant Haynes' Motion to Dismiss and Motion for Summary Judgment [Doc. 55], Defendant Mitchell's Motion for Summary Judgment [Doc. 59], and Plaintiff's "Motion/Request Relief from Judgment or Order" [Doc. 74].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Ajanaku Murdock ("Plaintiff") is a North Carolina inmate currently incarcerated at Alexander Correctional Institution in Taylorsville, North Carolina. Plaintiff filed this action on May 23, 2017, pursuant to 42 U.S.C. § 1983, naming fourteen individual Defendants. On initial review of Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court found that Plaintiff had asserted wholly unrelated claims against the different Defendants and allowed Plaintiff thirty (30) days to amend his Complaint to

comply with Rules 18 and 20 of the Federal Rules of Civil Procedure. [Doc. 11 at 2-3]. Plaintiff timely filed an Amended Complaint, naming as Defendants Sami Hassan, M.D., identified as a physician employed by the N.C. Department of Public Safety (NCDPS); R. David Mitchell, identified as the "Superintendent/Regional Director" of the NCDPS; Gregory Haynes, M.D., identified an NCDPS physician; and FNU Dixon, identified as a Nurse Supervisor for the NCDPS.[1] Plaintiff claims these Defendants violated Plaintiff's rights under the Eighth Amendment through their deliberate indifference to Plaintiff's serious medical needs while Plaintiff was housed at Lanesboro Correctional Institution ("Lanseboro"). Plaintiff seeks monetary damages, including punitive damages, and injunctive relief.

Defendants Haynes moved to dismiss pursuant to Rule 12(b)(6) and for summary judgment. [Doc. 55]. Defendant Mitchell also moved for summary judgment. [Doc. 59]. Thereafter, the Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Docs. 58, 62]. At this time, Defendants Hassan and Dixon had

---

[1] The Plaintiff named Defendant Gregory Haynes as "FNU Haines." His proper name has since been substituted in the docket in this matter. Nurse Dixon has not been not further identified in this matter.

not yet been served.[2]  Plaintiff timely responded to the motions to dismiss and for summary judgment by Defendants Haynes and Mitchell.  [Docs. 67, 67-1 through 67-8].  Defendant Haynes filed a reply brief [Doc. 68] and Plaintiff filed an unauthorized surreply [Doc. 69], which will not be considered by the Court.

On April 22, 2020, the Court ordered that it would dismiss Defendants Hassan and Dixon if Plaintiff did not show good cause for his failure to serve these Defendants within fourteen (14) days.  [Doc. 70].  On May 21, 2020, having received no response from Plaintiff, the Court dismissed Defendants Hassan and Dixon.[3]  [Doc. 71].  As such, this matter proceeds against only Defendants Mitchell and Haynes.

---

[2] The efforts undertaken by the Clerk of this Court and the U.S. Marshal to serve these Defendants is fully set forth in Docket No. 70.

[3] The next day, Plaintiff filed a response to the Court's show cause order that was dated May 1, 2020, but not postmarked until May 19, 2020.  [Docs. 73, 73-3].  On June 19, 2010, Plaintiff filed a "Motion/Request Relief from Judgment or Order" pursuant to Rule 60 of the Federal Rules of Civil Procedure in which he seeks relief from the Court's Order dismissing Defendants Hassan and Dixon.  [Doc. 74].  In his Rule 60 motion, Plaintiff acknowledges that he "is responsible for timely filing any documents with the court" but that he "has no control over the officials or how they process his mail."  [Id. at 2].  Plaintiff has not stated adequate grounds for relief under Rule 60.  Furthermore, even if Plaintiff's response to the Court's show cause Order had been timely filed, Plaintiff failed to show good cause therein for his failure to effectuate service on Defendants Hassan and Dixon. [See Doc. 73].

3

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party.  Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010).  To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. 662 at 678).

### B.     Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

4

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at

248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.  FACTUAL BACKGROUND

As to Dr. Haynes, Plaintiff alleged that Dr. Haynes took Plaintiff off Fioricet,[4] a medication that effectively treated Plaintiff, and "deliberately placed [Plaintiff] back on medicine that caused adverse side affects [*sic*] … despite [Plaintiff's] pleas and concern for [his] health."  [Doc. 16 at 8].  Plaintiff also alleges that he wrote Dr. Haynes "a letter attached to the request form." [Doc. 1 at 17].

---

[4] Fioricet contains a combination of acetaminophen (Tylenol), butalbital, and caffeine.  It is typically used to treat tension headaches.  Butalbital is a barbiturate or sedative that helps to decrease anxiety and causes sleepiness and relaxation.  According to the prescribing information for Fioricet, "butalbital is habit-forming and potentially abusable." Further, "tolerance, psychological, and physical dependence may occur especially following prolonged use of high doses" because of the barbiturate component of the drug.

As to Defendant Mitchell, Plaintiff alleged that Plaintiff wrote numerous letters and request forms to Mitchell, making him aware of the cruel and unusual treatment Plaintiff was receiving and Mitchell never answered one letter. [Doc. 16 at 7]. Plaintiff contends that Mitchell's refusal to act in response to Plaintiff's letters constituted deliberate indifference. [Id., see Doc. 1 at 4].

The evidentiary forecast before the Court demonstrates the absence of a genuine issue of material fact on Plaintiff's claims. This forecast consists of the Affidavit of Defendant Mitchell, Plaintiff's medical records, various prison records and correspondence from and to the Plaintiff, and an "Affirmation/Declaration" by Plaintiff signed under penalty of perjury. The Court describes the forecast of evidence only as it relates to Plaintiff's claims against Defendants Haynes and Mitchell.

Defendants' evidence tends to show the following. Defendant Mitchell worked for the NCDPS from 1994 until his retirement in January 2019. [Doc. 61-1 at ¶ 2]. At the time Plaintiff filed this action in November 2017 and on Defendant Mitchell's retirement, Mitchell was the Western Region Director of Prisons for the NCDPS. [Id. at ¶ 6]. As the Region Director, Mitchell had no role in the provision of medical care to individual prisoners nor did Mitchell supervise medical providers in their provision of care to prisoners. [Id. at ¶

8].  Defendant Mitchell has no medical education or training and was never involved in the medical care decision making process for any particular prisoner.  [Id. at ¶¶ 10-12].  Further, Defendant Mitchell did not have authority over the medical decision-making of any medical provider.  [Id. at ¶¶ 30-31].  Defendant Mitchell was not involved in any aspect of Plaintiff's medical care and has no knowledge of what symptoms Plaintiff experienced or what diagnoses or treatment(s) Plaintiff received.  [Id. at ¶¶ 20-26].  On occasion, as Region Director, Defendant Mitchell would receive correspondence from prisoners voicing concern or making complaints about medical care they were receiving.  [Id. at ¶ 27].  Depending on the nature of the concerns or complaints, Mitchell would direct the correspondence to certain other officials, such as the Directors of Nursing of a facility.  [Id. at ¶ 28].  Defendant Mitchell never directed a medical provider to undertake any particular course of treatment and, as Region Director, did not and would not have intervened in the medical decision-making process.  [Id. at ¶¶ 34-35].

Defendant Haynes is a medical doctor who provided care to Plaintiff at Lanesboro.  [See Doc. 56-1].  On February 1, 2016, Plaintiff had a follow up appointment with Dr. Haynes for treatment of Plaintiff's headaches.  [Id. at 1].  Dr. Haynes noted that Plaintiff had complained of migraines since 2011 and that light and noise aggravated Plaintiff's headaches.  [Id.].  At this visit,

Dr. Haynes prescribed Excedrin Migraine; Metoprolol Tartrate; and "BUTAL/APAP/CAF" (Butalbital, Acetaminophen, and Caffeine), which is the generic name for Fioricet, to treat Plaintiff's chronic migraines. [Id. at 2-3].

On August 28, 2017, after Plaintiff had filed the Complaint in this matter, Plaintiff saw Dr. Haynes for follow up care related to Plaintiff's chronic back and neck pain from a motor vehicle accident six years previously and a fall down stairs three years previously. [Doc. 56-1 at 4]. At this visit, Dr. Haynes prescribed Carbamazepine, which is indicated for chronic pain syndrome, and Excedrin Migraine and Propranolol HCl ("Propranolol") (20 milligrams two times daily), which are indicated for migraine treatment.[5] [Id. at 5].

On October 18, 2017, a note was entered in Plaintiff's medical record reflecting that he refused his Propranolol HCl and signed a medication refusal form. [Doc. 56-1 at 6]. Plaintiff requested to be placed on Fioricet for his migraines instead. Dr. Haynes declined to prescribe Plaintiff Fioricet at that time and recommended that Plaintiff discontinue the Propranolol in accordance with Plaintiff's request. [Id.].

---

[5] The medical record submitted by Dr. Haynes for this visit is incomplete, containing only the first two pages of a three-page record. [See Doc. 56-1 at 4-5; cf. Doc. 67-8 at 7-9]. The missing page notes new prescriptions for two other irrelevant medications and an order for x-rays to assess Plaintiff's complaints of "low back, neck, and right hand pain," as discussed more fully below. [Doc. 67-8 at 9].

Plaintiff's medication administration records reflect that between June 7, 2016 and December 30, 2017, Plaintiff refused various medications at least thirty-eight (38) times. [Doc. 56-1 at 11-15].

On February 22, 2018, Plaintiff again saw Dr. Haynes for a follow up visit. At this visit, Plaintiff complained of his continued chronic right ankle pain from the 2011 motor vehicle accident, lower back pain, and headaches. [Doc. 56-1 at 7]. Dr. Haynes recommended physical therapy for Plaintiff, noting that Plaintiff was having difficulty walking. [Id. at 9]. At this visit, Dr. Haynes prescribed Fioricet to treat Plaintiff's migraines and Carbamazepine for chronic pain syndrome. [Id. at 8]. Dr. Haynes discontinued Plaintiff's prescription for "APAP/ASA/CAF" (Acetominophen, Aspirin, and Caffeine) at this time. [Id.]. Plaintiff's medical record further reflects that, on July 26, 2018, Dr. Haynes renewed Plaintiff's prescription for Fioricet. [Id. at 10].

In response to Defendants' forecast of evidence, Plaintiff presents the following forecast of evidence relevant to his claims against Defendant Mitchell and Haynes. On or about May 31, 2014, Plaintiff went upstairs to take a shower, as he normally does "to work [his] ankle out by using the steps since [he had not] been able to receive any treatment [at Lanesboro]" for his ankle, which he had injured in a motor vehicle accident in 2011. [Doc. 67-5 at 7; see 56-1 at 7]. On his way back down the stairs, Plaintiff felt "an

excruciating sharp pain" that Plaintiff always felt when he "land[ed] [his] right foot at the wrong angle." [Id. at 7]. Plaintiff's leg buckled and he fell forward. Plaintiff's impact was cushioned by Officer Martinez, who was presumably accompanying Plaintiff down the stairs after Plaintiff's shower. [Id.]. Officer Martinez "practically saved [Plaintiff] from a more severe injury or even death." [Id.]. Plaintiff hit the ground and "Sgt. Diamond did an outstanding job keeping [Plaintiff] conscious." [Id.]. Someone removed Plaintiff's handcuffs waiting for the EMS to arrive. [Id.]. Plaintiff was transported to Anson Community Hospital for treatment. [See Doc. 67-5 at 8]. Plaintiff underwent several imaging studies there to assess possible injuries to his ankle, spinal cord, and head. [See id. at 9-14]. Plaintiff's right ankle was x-rayed, which showed a "questionable avulsion fracture at the distal aspect of the fibula" and "chronic sequela of a[n] avulsion facture at the medial malleolus." [Id. at 12]. All other studies were negative. Plaintiff was placed in a splint, given crutches, and discharged the same day. [Id. at 14].

On August 8, 2014, Plaintiff wrote Dr. Haynes a letter regarding Plaintiff's "medical situation." [Doc. 67-3 at 8]. In the letter, Plaintiff stated, "I really hate the fact that you just came in on the end of the treatment I've been receiving (rather the lack thereof) since I've been here." "…Not to flatter you, but until NOW, no doctor has taken any real interest in my medical

needs. You're smart, because you just read my file and pointed directly to the spot on my ankle that gives me the most pain. The other doctors couldn't but guess and didn't care." [Id.]. Plaintiff wrote to Dr. Haynes that:

> The medicine you just prescribed to me I had to stop taking because it seemed to make my problems worse and also making my chest hurt. Like in my heart. I feel sharp pains sporadically. I sweat more and lost my apetite [*sic*]. And I couldn't remember how to take the meds or at what times. So I tried just taking one instead of all 3 at the same time, but it never prevented my migraines nor dizzy spells or flashbacks. I have to write everything down because I'm scared of something happening with my brain, like an aneurysm or something. The orthopedic specialist said I had avascular necrosis in my ankle and the neurosurgeon said he couldn't tell me if my brain would ever fully recover [from previous traumatic brain injury]. And [Dr. Haynes], I'm scared.

[Doc. 67-3 at 9]. Plaintiff also relayed that, on July 17, 2014, he fell in his cell because of an intense migraine and he cannot remember if he fell because of his ankle or because he was dizzy and fainted. [Id.]. Plaintiff then asked Dr. Haynes for help because Plaintiff had already "filled out the necessary sick call follow ups." [Id.]. The evidence of record does not reflect whether Dr. Haynes ever received this letter.

On August 27, 2014, Plaintiff prepared an Inmate Request for Information directed to Defendant Mitchell as "Superintendent." [Doc. 67-3 at 12]. In this Request, Plaintiff references a F.O.I.A. request Plaintiff had

sent to "Mr. Solomon" seeking access to "the policy book," but which Plaintiff notes "was directed to [Defendant Mitchell]."[6] [Id.]. A staff member responded to Plaintiff's Request on September 2, 2014, stating "[y]our letter was not intercepted. It was sent to Mr. Mitchell through CTS [Correspondence Tracking System]. A copy of your original letter is attached." [Id.].

On November 18, 2014, Plaintiff wrote a letter to Defendant Mitchell as "Superintendent of L.C.I.," in which Plaintiff outlines "several pressing matters" at Lanesboro. [Doc. 67-3]. In this letter, Plaintiff noted that he could not file a grievance because he already had one pending "concerning the lack of medical treatment, the disrespectful nurse Patch, the mistreatment, negligence, etc.," so he was instead writing Defendant Mitchell to address the issues that have arisen. [Id. at 19]. In the letter, Plaintiff's claimed that on November 15, 2014 his cell was searched while Plaintiff was held in a "holding cage" for an hour. When he returned to his cell, Plaintiff discovered that many of his belongings were destroyed and much of his "legal work," photographs, and spiritual materials were missing or "trashed." [Id. at 19-

---

[6] Plaintiff's F.O.I.A. (Freedom of Information Act) request was dated August 5, 2014 and seeks various policies, standards, and regulations related to the medical and mental health care of prisoners. [Doc. 67-3 at 11]. Plaintiff stated that he had a "compelling need dealing with both medical and mental health stemming from a vehicular accident as well as falling down the stairs here at [Lanesboro] and in return receiving inadequate care, which is an ongoing problem for [Plaintiff]." [Id.].

20].  Plaintiff also complained that certain officers were harassing him, that he had been unable to participate in recreation time since September because Sergeant Horne would take his crutches, that he had not had his haircut in three months, that Plaintiff's medical issues were not being adequately treated, and that an important piece of his mail had been lost. [Id. at 21-22].  Finally, Plaintiff advised Defendant Mitchell that he intended to litigate "the matter of [his] personal and spiritual property."  [Id. at 22].

On April 30, 2015, Plaintiff filed a grievance regarding various medical issues and concerns.[7]  [Doc. 67-3 at 35-38].  Plaintiff appears to have predominantly grieved his alleged lack of timely access to medical care and the failure to appropriately treat his ankle pain and migraines.  In the grievance, Plaintiff writes, "Dr. [Haynes] is fairly decent, by far the best doctor this facility has had, yet he fails to treat me on my ankle, looking at old X-rays.  I was given Ibuprofen which doesn't help at all.  I have yet to be given a cane, I can't exercise due to I've been refused Dr. Two Shoes."  [Id. at 36]. There is no evidence that Dr. Haynes was provided with this grievance or otherwise aware of it.

---

[7] The first page of the grievance is, in very large part, completely illegible.  [See Doc. 67-3 at 35).  As such, the Court's recitation of the relevant portions of the grievance is derived solely from the remaining pages of the document.  [See id. at 36-38].

On April 1, 2016, Plaintiff wrote a letter to Defendant Mitchell in which Plaintiff states, "[t]his is my last attempt to try to get you to address the plethora of malfeasance behavior from your staff as well as the messed up medical facility here." [Doc. 67-3 at 42]. In this letter, Plaintiff enumerates various complaints, including his need for "REAL medical attention" and mental health treatment, the destruction of Plaintiff's "property, legal [and] personal items," and interference with and destruction of Plaintiff's mail. [Id.].

Plaintiff also includes in his summary judgment materials the medical record from his August 28, 2017 visit with Dr. Haynes, which is described above. Again, at that visit, Plaintiff saw Dr. Haynes in follow up for Plaintiff's chronic back and neck pain related to a previous motor vehicle accident. [Doc. 67-8 at 7]. Dr. Haynes prescribed Carbamazepine, Excedrin Migraine, and Propranolol, and ordered x-rays of Plaintiff's spine and right hand. [Id. at 8]. The x-rays were taken on August 31, 2017 and the results reviewed by Dr. Haynes on September 4, 2017. [Id. at 13-15]. There did not appear to be any significant findings. [See id. at 13-14]. On September 10, 2017, Plaintiff prepared a Request for Information directed to Dr. Haynes. [Doc. 67-6 at 11]. In this "Request," Plaintiff wrote that he cannot take the medications that Dr. Haynes prescribed on August 28, 2017 and gave a list of medications that Plaintiff claims to have been previously prescribed.

These included Diclofenac, Acetaminophen (Tylenol), Propranolol, and Fluoxetine. [Id.]. Plaintiff also referenced Fioricet in this Request and the fact of never having experienced side effects from it. [Id.]. The staff responded to Plaintiff's Request, advising Plaintiff that he "need[ed] to submit a sick call to see the provider again." [Id.]. There is no evidence in the record that Dr. Haynes was given or otherwise aware of this Request.

On September 26, 2017, Plaintiff submitted a grievance for the "gross, inadequate, even recklessly endangering medical treatment [he] just received from Dr. Haynes." [Doc. 67-7 at 1]. In the grievance, Plaintiff complained that Dr. Haynes refused to prescribe Plaintiff Fioricet at Plaintiff's August 28, 2017 visit. Plaintiff claimed that Dr. Haynes initially prescribed Plaintiff Fioricet, but that Plaintiff's medical record reflected no such past prescription and that Dr. Haynes, therefore, refused to prescribe it. [Id. at 2-3]. Plaintiff also complained that Dr. Haynes had prescribed Propranolol in the past and that Plaintiff had "written sick calls and subsequent grievances" complaining about this medicine giving Plaintiff shortness of breath, chest pains, itching, and blurred vision.[8] [Id. at 4-5]. Further, Plaintiff complained that despite those sick calls and grievances, Dr. Haynes again prescribed Propranolol to Plaintiff. [Id. at 5]. Plaintiff also reported that despite having

---

[8] Evidence of these sick calls is not included in Plaintiff's summary judgment materials.

suffered the above side effects, he decided "out of good faith" to take the Propranolol for almost a month and experienced the same side effects. [Id.]. Plaintiff also stated that he was unsure if Dr. Haynes had a "personal vendetta" against Plaintiff because Plaintiff included him in the instant lawsuit. [Id. at 4].

On October 18, 2017, Plaintiff signed a Medical Treatment Refusal in which his refusal to take Propranolol was documented. [Doc. 67-6]. In the Refusal, Plaintiff stated that he was having "hard side effect" from the Propranolol and "want[s] to be back on Fioricet for Migraine." [Id.].

This matter is now ripe for disposition.

## IV. DISCUSSION

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th

Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763. Therefore, a disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a

medical clinic, as such claim did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Farmer, 511 U.S. 825, 837 (1994). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837.

## A.    Defendant Haynes

### 1.    Motion to Dismiss

Plaintiff's claim against Dr. Haynes in this matter is limited to an alleged violation of Plaintiff's Eighth Amendment rights through Dr. Haynes' deliberate indifference to Plaintiff's serious medical needs. Plaintiff did not state a claim for medical negligence against Dr. Haynes nor was one recognized in the Court's initial review Order in this case. [See Doc. 17].

The Court notes, however, that to the extent Plaintiff intended to assert a state law claim of medical negligence against Dr. Haynes, Plaintiff failed to comply with North Carolina's legal requirements for pursuing a medical malpractice claim. Rule 9(j) of the North Carolina Rules of Civil Procedure

requires plaintiffs asserting medical malpractice actions to obtain an expert review of "the medical care and all medical records" before filing a lawsuit, and for a medical expert to certify that. N.C. Gen. Stat. § 1A-1, Rule 9(j). Plaintiff failed to include a Rule 9(j) expert witness certification as to any potential medical malpractice claim, nor did he file a motion to qualify any reviewing expert "with the complaint," as required by Rule 9(j)(2), nor did he mention the common law doctrine of res ipsa loquitur doctrine or allege any facts giving rise to application of that doctrine.

In sum, because Plaintiff failed to comply with Rule 9(j), any state law medical negligence claim Plaintiff intended to assert must be dismissed. Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004) (failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim filed in federal court); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676-77 (W.D.N.C. 2004) (same).

## 2. Summary Judgment

To succeed on a claim against Defendant Haynes under the Eighth Amendment, Plaintiff must show a deliberate indifference to Plaintiff's serious medical needs. Estelle, 429 U.S. at 104. To establish such indifference, the "treatment must be so grossly incompetent, inadequate, or

excessive as to shock the conscious or to be intolerable to fundamental fairness." <u>Miltier</u>, 896 F.2d at 851.  Absent exceptional circumstances, a disagreement between a prisoner and a physician over the prisoner's proper medical care is not grounds for a § 1983 claim. <u>Wright</u>, 766 F.2d at 849.

Here, the forecast of evidence shows, at best, a disagreement between Dr. Haynes and the Plaintiff regarding whether Plaintiff should be prescribed Fioricet for his migraines.  Although Plaintiff presents a forecast of evidence tending to show that he experienced some delays in receiving care, no evidence suggests that these delays were the fault of Dr. Haynes.  Further, when Dr. Haynes treated Plaintiff, he consistently prescribed multiple medications in attempts to treat Plaintiff's headaches, making modifications to the treatment regimen over time.  While Plaintiff forecasts evidence that he complained to Dr. Haynes regarding side effects Plaintiff experienced from Propranolol, Plaintiff was not required to take this medication (and in fact refused to take it and other medications repeatedly) and was prescribed Fioricet to treat his migraines, although not continuously.  As noted, Fioricet contains a barbiturate and is habit-forming.  Limitations on its prescription among inmates, or in the general population for that matter, hardly connotes deliberate indifference, but rather intentional deliberation regarding a balance of factors.  The forecast of evidence shows that Dr. Haynes

addressed Plaintiff's serious medical needs and that Plaintiff simply wanted Dr. Haynes to prescribe a medication that Dr. Haynes intentionally declined to prescribe for Plaintiff during certain periods. This is insufficient to go to a jury on a § 1983 claim under the Eighth Amendment against Dr. Haynes. Summary judgment is, therefore, appropriate.

### B. Defendant Mitchell

Plaintiff's claim for deliberate indifference against Defendant Mitchell revolves entirely on Plaintiff's correspondence to Defendant Mitchell in which Plaintiff notifies Mitchell of the allegedly inadequate medical treatment Plaintiff was receiving. The forecast of evidence shows that Defendant Mitchell was employed by the NCDPS as the Western Region Director of Prisons at the relevant times. In this role, Mitchell was not involved in any aspect of the medical care of prisoners at Lanesboro and never intervened in any aspect of medical decision-making. Furthermore, Mitchell, as Region Director, would on occasion receives correspondence from prisoners making complaints about medical care they were receiving. Depending on the nature of the concerns, Mitchell would direct the correspondence to certain other prison officials. Defendant Mitchell was not involved in any aspect of Plaintiff's medical care and had no knowledge of Plaintiff's symptoms, diagnoses, or treatments. Plaintiff's forecast of evidence shows that

22

Plaintiff's F.O.I.A. request was directed to Defendant Mitchell. This request referenced "inadequate care" received by Plaintiff for his "medical and mental health" at Lanesboro. Plaintiff also wrote two letters to Defendant Mitchell, one in 2014 and one in 2016, in which Plaintiff enumerates several complaints regarding certain events at Lanesboro. In the 2014 letter, Plaintiff complained that his medical issues were not being adequately treated and in the 2016 letter that he needed "REAL medical attention."

Plaintiff has not raised a genuine issue for trial here. Specifically, Plaintiff has failed to establish that Defendant Mitchell had the requisite state of mind to establish "deliberate indifference" under the law. Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. 825, 837 (1994). Further, a prison official is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Id. at 837.

The forecast of evidence in this case fails to satisfy either of these elements as to Defendant Mitchell's state of mind. Plaintiff's vague

references to receiving inadequate medical care could not have alerted Defendant Mitchell to a substantial risk of serious harm to hold a prison official liable for deliberate indifference to a serious medical need under the Eighth Amendment. Further, there is no evidence that Defendant Mitchell actually drew the inference and recognized the existence of such risk, even if Plaintiff's correspondence were sufficient to alert Mitchel to the risk of harm.

As such, Plaintiff has also failed to raise a genuine issue of material fact as to Defendant Mitchell. Summary judgment for Defendant Mitchell is, therefore, appropriate.

## IV. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendants Haynes and Mitchell.

**IT IS, THEREFORE, ORDERED** that Defendant Haynes' Motion to Dismiss [Doc. 55] is **GRANTED** as to any claim for medical negligence; Defendant Haynes' Motion for Summary Judgment [Doc. 55] is **GRANTED**; and Defendant Mitchell's Motion for Summary Judgment [Doc. 59] is **GRANTED** and this action is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion/Request Relief from Judgment or Order" [Doc. 74] is **DENIED**.

24

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: July 9, 2020

Martin Reidinger
Chief United States District Judge